UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

....................................................

KPN B.V.,

                                  Plaintiff,

              - against -

CORCYRA D.O.O.,
KSD PACIFIC, LLC,
MOSHE HAR ADIR, and
YOSSI ATTIA,

                                  Defendants.

....................................................

08 CV 1549 (JGK)

ELECTRONICALLY FILED

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW OF PLAINTIFF KPN B.V. IN OPPOSITION
TO DEFENDANTS' MOTIONS TO QUASH SERVICE OF THE
SUMMONS AND COMPLAINT AND MOTIONS TO DISMISS THE COMPLAINT**

ALLEN & OVERY LLP
Jacob S. Pultman
Laura Martin
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300

*Attorneys for Plaintiff
KPN B.V.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL SUMMARY ...............................................................................................2

      A.     Summary of Complaint.................................................................2

      B.     Service of Summons and Complaint.......................................6

      C.     Procedural Posture ......................................................................7

ARGUMENT ...............................................................................................................7

I.     THE COMPLAINT ALLEGES SUBSTANTIAL FACTS ESTABLISHING
      JURISDICTION OVER EACH DEFENDANT.................................................10

      A.     Specific Jurisdiction in New York over Mr. Adir and KSD is established by
               their direct involvement in the Transaction .........................................10

      B.     Specific Jurisdiction in New York over Mr. Adir and KSD is established
               through their status as alter egos of Corcyra.........................................14

      C.     Mr. Adir and KSD are bound by the Escrow Agreement's forum selection
               clause..............................................................................................16

      D.     Genuine issues of fact—if any—concerning jurisdiction should be determined
               after jurisdictional discovery through an evidentiary hearing ...............18

II.    THE SUMMONS AND COMPLAINT HAVE BEEN PROPERLY SERVED UPON
      CORCYRA AND MR. ADIR.................................................................................19

III.   KSD AND MR. ATTIA ARE AMENABLE TO SUIT WITHOUT JOINDER OF
      ANY ADDITIONAL PARTIES..............................................................................20

IV.   MR. ATTIA IS LIABLE FOR CORCYRA'S BREACH OF THE TRANSACTION
      DOCUMENTS.........................................................................................................21

      A.     Mr. Attia is liable as the alter ego of Corcyra and KSD in connection with the
               Transaction.....................................................................................23

      B.     Plaintiff KPN has been harmed by the Defendants' misuse of corporate forms ...24

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

<u>**CASES**</u>

Page

3Com Corp. v. Banco do Brasil, S.A.,
    171 F.3d 739 (2d Cir. 1999)...................................................................................9

A.I. Trade Finance, Inc. v. Petra Bank,
    989 F.2d 76 (2d Cir. 1993).............................................................................. passim

Albright v. Oliver,
    510 U.S. 266 (1994)...........................................................................................7

Allojet PLC v. Vantage Assocs.,
    No. 04-CV-5223, 2005 WL 612848 (S.D.N.Y. Mar. 15, 2005)...............................14

American Fuel Corp. v. Utah Energy Development Co.,
    122 F.3d 130 (2d Cir. 1997)...................................................................................9

American Protein Corp. v. AB Volvo,
    844 F.2d 56 (2d Cir. 1988)....................................................................................23

Anderson Street Realty Corp v. RHMB New Rochelle Leasing Corp.,
    243 A.D.2d 595, 663 N.Y.S.2d 279 (2d Dep't 1997).............................................22

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)....................................................................................8

Bell Atl. Corp. v. Twombly,
    --- U.S. ---, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................8

Berkey v. Third Avenue Ry. Co.,
    244 N.Y. 84, 155 N.E. 58 (1926).........................................................................22

Brentsun Realty Corp. v. D'Urso Supermarkets, Inc.,
    182 A.D.2d 604, 582 N.Y.S.2d 216 (2d Dep't 1992).............................................18

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)..........................................................................................11

Cleveland v. Caplaw Enters.,
    448 F.3d 518 (2d Cir. 2006)..................................................................................7

Components Direct, Inc. v. European American Bank and Trust Co.,
    175 A.D.2d 227, 572 N.Y.S.2d 359 (2d Dep't 1991).............................................9

D. Klein & Son, Inc. v. Good Decision, Inc.,
   No. 04-1994, 147 Fed. Appx. 195, 2005 WL 361674 (2d Cir. Feb. 15, 2005) ......................14

Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,
   7 N.Y.3d 65, 850 N.E.2d 1140, 818 N.Y.S.2d 164 (2006).....................................................10

Extra Equipamentos e Exportao Ltda. v. Case Corp.,
   361 F.3d 359 (7th Cir. 2004) ..................................................................................................21

Fashion Tanning Co. v. Shutzer Indus.,
   108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dep't 1985) .............................................................12

Fischbarg v. Doucet,
   9 N.Y.3d 375, 880 N.E.2d 22, 849 N.Y.S.2d 501 (2007).......................................................12

Ganino v. Citizens Utilities Co.,
   228 F.3d 154 (2d Cir. 2000)......................................................................................................8

Grant-Howard Assoc. v. General Housewares Corp.,
   63 N.Y.2d 291, 472 N.E.2d 1, 482 N.Y.S.2d 225 (1984)......................................................21

Hamilton v. Carell,
   243 F.3d 992 (6th Cir. 2001) ..................................................................................................24

Hanson v. Denckla,
   357 U.S. 235 (1958)................................................................................................................11

In re Parmalat Securities Litigation,
   501 F. Supp. 2d 560 (S.D.N.Y. 2007).......................................................................................9

Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.,
   975 F. Supp. 483 (W.D.N.Y. 1997) ........................................................................................16

Int'l Shoe Co. v. Washington,
   326 U.S. 310 (1945)................................................................................................................11

Island Seafood Co. v. Golub Corp.,
   303 A.D.2d 892, 759 N.Y.S.2d 768 (3d Dep't 2003) .............................................................23

Jazini v. Nissan Motor Co.,
   148 F.3d 181 (2d Cir. 1998).................................................................................................8, 18

Jones v. Weibrecht,
   901 F.2d 17 (2d Cir. 1990).......................................................................................................16

Koehler v. Bank of Berm., Ltd.,
   101 F.3d 863 (2d Cir.1996)................................................................8

Kreutter v. McFadden Oil Corp.,
   71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988)....................10

Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.,
   179 F. Supp. 2d 118 (S.D.N.Y. 2000)...................................................9

Longines-Wittnauer Watch Co. v. Barnes & Reinecke,
   15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965)........................10

Lowen v. Tower Asset Mgmt.,
   829 F.2d 1209 (2d Cir.1987)..............................................................24

Maersk, Inc. v. Neewra, Inc.,
   --- F. Supp. 2d --- 2008 WL 929481 (S.D.N.Y. Mar. 27, 2008).........9, 18

Mag Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,
   268 F.3d 58 (2d Cir. 2001).................................................................23

Marine Midland Bank, N.A. v. Miller,
   664 F.2d 899 (2d Cir. 1981)...............................................................14

Merrill Lynch & Co. v. Allegheny Energy, Inc.,
   500 F.3d 171 (2d Cir. 2007)...............................................................21

National Equipment Rental, Ltd. v. Szukhent,
   375 U.S. 311 (1964).........................................................................19

Network Enters. v. APBA Offshore Prods.,
   427 F. Supp. 2d 463 (S.D.N.Y. 2006)..................................................23

Packer v. TDI Sys.,
   959 F. Supp. 192 (S.D.N.Y. 1997).......................................................16

Parke-Bernet Galleries v. Franklyn,
   26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970)...............10, 12

Port Chester Elec. Constr. Co. v. Atlas,
   40 N.Y.2d 652, 357 N.E.2d 983, 389 N.Y.S.2d 327 (1976)...................22

Rielly Co. v. Lisa B. Inc.,
   181 A.D.2d 269, 586 N.Y.S.2d 668 (3d Dep't 1992)..............................12

Schumacher v. Richards Shear Co.,
    59 N.Y.2d 239, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983)............................................16, 18

Societe Anonyme Dauphitex v. Schoenfelder Corp.,
    No. 07 Civ. 489, 2007 WL 3253592 (S.D.N.Y. Nov. 7, 2007) .............................................16

Valley Fin., Inc. v. United States,
    629 F.2d 162 (D.C.Cir. 1980).................................................................................................24

Viacom Intern., Inc. v. Kearney,
    212 F.3d 721 (2d Cir. 2000)...................................................................................................21

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
    751 F.2d 117 (2d Cir. 1984)...................................................................................................14

Walkovszky v. Carlton,
    18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (2d Dep't 1966)........................................22

Weinreich v. Sandhaus,
    850 F. Supp. 1169 (S.D.N.Y. 1994).................................................................................22, 23

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
    933 F.2d 131 (2d Cir. 1991)...........................................................................................21, 22, 23

## STATUTES AND RULES

                                                            Page

Fed. R. Civ. P. 4............................................................................................................19, 20

Fed. R. Civ. P. 19..........................................................................................................20, 21

N.Y. C.P.L.R. § 302(a)(1)......................................................................................................10

Plaintiff KPN B.V. ("KPN") submits this memorandum in opposition to (a) the motion of Corcyra D.O.O. ("Corcyra") to quash service of the Summons and Complaint (the "Corcyra Motion"); (b) the motion of KSD Pacific, LLC ("KSD") for dismissal of the Complaint (the "KSD Motion"); (c) the motion of Moshe Har Adir to quash service of the Summons and Complaint and for dismissal of the Complaint (the "Adir Motion"); and (d) the motion of Yossi Attia for dismissal of the Complaint (the "Attia Motion") (the Corcyra Motion, the KSD Motion, the Adir Motion and the Attia Motion are collectively referred to as the "Motions to Quash and Dismiss").

## PRELIMINARY STATEMENT

Not content with breaching their contractual obligations under a series of agreements with Plaintiff, and unwilling to stand by the guaranty of the transaction, Defendants now bring an array of motions seeking dismissal under a variety of theories including an attack on the jurisdiction of this Court and the service of the Complaint—despite agreeing in the very contracts they signed to the method of service here employed and to this Court's jurisdiction. Notably, Defendants have no defense to the claims of the Complaint and say nothing to challenge the case against them. For the reasons detailed below, their procedural motions are of comparable merit to their substantive defense.

Defendants engaged in a corporate shell game to avoid obligations arising out of a transaction to purchase Plaintiff's shares in EuroWeb International Corporation ("EuroWeb"). Corcyra, as counterparty to the transaction, and KSD, as successor-in-interest to Corcyra, have both admitted through SEC filings and correspondence from counsel, that they are obligated to pay the amounts outstanding for the purchase of these shares. Mr. Adir guarantied this purchase and orchestrated the transaction through Corcyra—a company that he dominated and controlled as its sole officer, director and shareholder. Mr. Attia later replaced Mr. Adir in this position of

dominance over Corcyra when another company that he dominated, KSD, purchased Mr. Adir's interests in Corcyra and then merged Corcyra's assets into KSD for no consideration. Corcyra was then stripped of its assets while Defendants delayed performance of the transaction.

Defendants now seek to avoid their responsibility through various illusory arguments that have no support as a matter of law or fact, and do not in any way defeat Plaintiff KPN's recourse to this Court for specific performance and damages resulting from Defendants' conduct. Contrary to Defendants' assertions, this Court has jurisdiction over each Defendant, each Defendant was properly served, no joinder of any party is required and liability under alter ego and successor-in-interest doctrines have been pled against Mr. Attia. As a result, Defendants' Motions to Quash and Dismiss should be summarily denied.

## **FACTUAL SUMMARY**

### A.    SUMMARY OF COMPLAINT

Plaintiff KPN's Complaint arises out of a failure of the Defendants to satisfy their obligations in relation to the purchase of 2,326,043 shares in EuroWeb from Plaintiff (the "Purchased Shares"), a transaction that was negotiated by attorneys appointed by the parties in New York with performance designated to take place in New York (the "Transaction"). (Compl. ¶ 1 and Exs. 1, 2, 3.) The Complaint seeks specific performance and damages from Corcyra as the counterparty to the Transaction; Moshe Har Adir as guarantor of the Transaction and alter ego of Corcyra; KSD as alter ego and successor to Corcyra; and Yossi Attia as alter ego of Corcyra and KSD.

1.    *The Transaction*

The Transaction was documented through three interrelated agreements: (1) the Stock Purchase Agreement between KPN and Corcyra dated January 28, 2005 as amended by

two amendments as of April 28, 2006 and December 1, 2006 (the "SPA") (Compl. Exs. 1, 2, 3);

(2) the Escrow Agreement among KPN, Corcyra and JPMorgan Chase Bank N.A. dated as of

January 28, 2005 as amended by two amendments as of April 26, 2006 and December 1, 2006

(the "Escrow Agreement") (Compl. Exs. 4, 5, 6); and (3) the Guaranty executed by Moshe Har

Adir for the benefit of KPN dated as of January 28, 2005 as amended by additional letter

guaranties signed as of April 28, 2006 and December 1, 2006 (the "Guaranty") (the SPA, the

Guaranty and the Escrow Agreement are collectively referred to herein as the "Transaction

Documents")  (Compl. Exs. 7, 8, 9).  Mr. Adir, as "Sole Officer, Director and Shareholder" of

Corcyra at the time, executed the original SPA and Escrow Agreement on behalf of Corcyra in

addition to executing the Guaranty (and subsequent guaranties) in his personal capacity.  (Compl.

Ex. 1, 7.)

After Mr. Adir's and Corcyra's execution of the original SPA and Escrow

Agreement but before the two amendments, KSD became Corcyra's sole shareholder and Mr.

Attia, the sole member of KSD, became the "Sole Officer [and] Director" of Corcyra.   (Compl.

Ex. 10 at 5.)  Mr. Attia executed the two amendments to the SPA and Escrow Agreement in this

dual capacity and with this sole and overlapping responsibility.  (Compl. Ex. 10 at 5.)  KSD later

transferred the common stock of EuroWeb held by Corcyra into the name of KSD, moving

Corcyra's assets to KSD through a transaction in which no cash was exchanged.  (Compl. ¶ 52.)

This transfer combined the businesses of these two companies.  (Id.)

The SPA provided that the Purchased Shares would be sold to Corcyra in two

separate tranches.  After KPN successfully completed delivery of the first tranche and received

payment from Corcyra, Corcyra requested additional time to close the purchase of the remaining

shares, leading to amendments of the Transaction Documents that divided the remaining shares

into additional separate tranches for delivery. (Compl. ¶ 28.) After KPN successfully completed the next delivery and received payment from Corcyra, Corcyra again requested additional time to purchase the remaining stock outstanding under the Transaction Documents, leading to a second round of amendments. (Compl. ¶ 42.) On the final closing date, July 2, 2007, KPN was prepared to close. (Compl. ¶ 50.) Corcyra and KSD, however, refused to close and subsequently refused to honor their obligations under the Transaction Documents. (Compl. ¶ 51-55.) Mr. Adir has failed to honor his agreement under the Guaranty. (Compl. ¶ 56.)

2.    <em>Connections to New York</em>

The Transaction had numerous connections to New York. All parties engaged lawyers in New York who acted as the primary deal counsel for the Transaction. Plaintiff was represented by Allen & Overy LLP in New York. (Compl. ¶ 16.) Corcyra and Mr. Adir were represented by New York lawyer Elliot Lutzker initially of Robinson & Cole LLP and later Phillips Nizer LLP, who acted as Corcyra's and Mr. Adir's agent in New York. (Comp. Exs. 1, 10.) Specifically, Mr. Lutzker negotiated the Transaction Documents and transmitted information, among other activities related to the Transaction.

The Escrow Agreement, signed by Mr. Adir himself as Sole Officer, Director and Shareholder of Corcyra, specifically represents that "[t]his Agreement has been negotiated, executed and delivered in the state of New York." (Compl. Ex. 4 § 7(e).) Instructions for wire transfers indicated that payment for the Transaction would be sent to New York. (See, e.g., Compl. Ex. 2 at Exhibit 3; Ex. 3 at Exhibit 3.) The Escrow Agreement also appointed a New York escrow agent, JPMorgan Chase Bank N.A. (Compl. Ex. 4.) Notice provisions in the SPA and Escrow Agreement included the address of Corcyra's lawyer, Elliot H. Lutzker, Esq., in New York. (Compl. Exs. 1 and 4.)

In addition to designating their lawyer, Elliot Lutzker, as agent in the Transaction, Corcyra and KSD used his contact information as their business address for SEC filings connected to this Transaction, with both Corcyra and KSD identifying Mr. Lutzker as the "Person Authorized to Receive Notices and Communications."  (See, e.g., Compl. Exs. 10, 11.)

3.    *New York Forum Selection Clause*

In addition to the substantial actions in New York and the direct additional connections to New York, the Escrow Agreement that was necessary under the terms of the SPA specifically provided that each of the parties submit to the jurisdiction of the New York courts and waive formal service of process. (Compl., Ex. 4 § 7(d).)  Section 7(d) states that:

> Each party irrevocably and unconditionally submits to the exclusive jurisdiction of (a) the Supreme Court of the State of New York, New York County, and (b) the United States District Court for the Southern District of New York, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby.  Each party to this Agreement hereby waives formal service of process and agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective addresses forth above shall be effective service of process for any action, suit or proceeding in New York with respect to any matters to which it has submitted to jurisdiction in this Section 7(d).

(Compl. Ex. 4, § 7(d).)

4.    *Admissions of liability*

Both Corcyra and KSD have admitted that they are obligated to make payment to KPN under the terms of the Transaction Documents but they have failed to perform.  Corcyra has admitted its obligations through its SEC filings.  (Compl. Ex. 10 (Schedule 13D filed by Corcyra in which Corcyra explained that pursuant to the SPA, "Corcyra had agreed to purchase KPN's remaining 2,036,188 shares (subject to appropriate adjustment) of common stock . . . of

the Issuer.").)  Subsequent to KSD's consolidation with Corcyra, KSD, through its counsel Elliot

Lutzker, stated that KSD was seeking to specify a date upon which it would fulfill the

obligations due under the SPA (Compl. Ex. 12 ("Mr. Attia will be in a better position to provide

you with some degree of certainty as to a date when KSD Pacific, LLC ("KSD") will make final

payment to KPN under the January 28, 2005 Stock Purchase Agreement, as amended (the

"SPA").  KSD has every intention of making its final payment to KPN, hopefully within the next

90 days, but no later than December 31, 2007."))[1]

> 5.    *Consequences of the abuses of corporate forms*

Defendants have stripped Corcyra of its assets and it is now a shell company with

no incentive to perform its contractual obligations.  (Compl. ¶¶ 52-53; Compl. Ex. 12.)

B.    SERVICE OF SUMMONS AND COMPLAINT

KPN properly served each of the Defendants, going to great lengths to complete

service pursuant to the relevant agreements and to ensure that each Defendant received actual

and timely notice of the commencement of this action.  KPN provided numerous copies of the

Summons and Complaint to the Defendants by various methods, including personal service,

registered mail, overnight delivery and facsimile.

> 1.    *Corcyra*

Corcyra was personally served at the U.S. address it designated and additional

copies were sent via overnight delivery and facsimile to its Croatian addresses.  (Declaration of

Jacob S. Pultman dated June 23, 2008 ("Pultman Decl.") Ex. 1.)  Corcyra's U.S. address, which

was designated by Corcyra for notices and service under the Transaction Documents (Compl. Ex.

---

[1]    Notwithstanding claims that Mr. Lutzker was acting only as counsel for Corcyra in making these statements, this position is belied by the fact that the letter was written <u>after</u> KSD had transferred Corcyra's EuroWeb shares into KSD's own name, making the entities effectively one and the same. Indeed, Mr. Lutzker's letter was communicating KSD's intentions with regard to the Transaction and indicated that payment was being made by KSD.

1), was the address of its attorney Elliot Lutzker.  In addition, this was the address used in the SEC filings made in connection with this transaction by Corcyra in designating the "Person Authorized to Receive Notices and Communications."  (See, e.g., Compl. Ex. 10.)  Corcyra was also served on June 17, 2008 at its Croatian addresses by registered mail.  (Pultman Decl. Ex. 3.)

### 2.    Mr. Adir

Mr. Adir, as alter ego of Corcyra, was properly served through service of Corcyra (in the same manner as described above).  In addition, Mr. Adir waived service of process as Corcyra's alter ego, agreeing to be served at Corcyra's addresses listed in the notification section of the Escrow Agreement.  (Pultman Decl. Ex. 2.)  As with Corcyra, Mr. Adir was also served on June 17, 2008 at Corcyra's Croatian address and at the address provided in the Guaranty by registered mail.  (Pultman Decl. Ex. 3.)

### 3.    KSD and Mr. Attia

Both KSD and Mr. Attia were also properly served and do not contest service.

## C.    PROCEDURAL POSTURE

In response to the Complaint filed by Plaintiff KPN on February 14, 2008, Mr. Adir and KSD have moved to dismiss for lack of personal jurisdiction, Corcyra and Mr. Adir have moved to quash service of the Summons and Complaint, KSD and Mr. Attia have moved to dismiss for failure to join a necessary party and Mr. Attia has moved to dismiss for failure to allege a theory of liability.

## ARGUMENT

On a Rule 12(b)(6) motion to dismiss, a court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994); Cleveland v. Caplaw Enters., 448 F.3d

518, 521 (2d Cir. 2006); <u>Ganino v. Citizens Utilities Co.</u>, 228 F.3d 154, 161 (2d Cir. 2000). The

court may also consider any written instrument attached to the complaint, statements or

documents incorporated into the complaint by reference and legally required public disclosure

documents filed with the SEC, among other things. <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>,

493 F.3d 87, 98 (2d Cir. 2007).

      A court must deny a motion to dismiss if the plaintiff has provided the grounds

upon which his claim rests through factual allegations sufficient to "'to raise a right to relieve

above the speculative level.'" <u>ATSI Commc'ns</u>, 493 F.3d at 98, quoting <u>Bell Atl. Corp. v.

Twombly</u>, --- U.S. ---, 127 S.Ct. 1955, 1965, 167 L. Ed.2d 929 (2007).

      On a Rule 12(b)(2) motion for lack of personal jurisdiction, a court must deny the

motion to dismiss if plaintiff has made a prima facie showing that the defendants are amenable to

jurisdiction. <u>A.I. Trade Finance, Inc. v. Petra Bank</u>, 989 F.2d 76, 79-80 (2d Cir. 1993). At the

pleading stage, a plaintiff may make this showing through pleadings, supporting materials and

affidavits. <u>Id.</u>; <u>see</u> <u>also</u> <u>Koehler v. Bank of Berm., Ltd.</u>, 101 F.3d 863, 865 (2d Cir. 1996). Once

again, allegations are construed in the light most favorable to the plaintiff and doubts are

resolved in the plaintiff's favor. <u>A.I. Trade Finance</u>, 989 F.2d at 79-80.

      If the court concludes that jurisdiction should be determined at this stage through

an evidentiary hearing, the court must allow the plaintiff to conduct reasonable jurisdictional

discovery and permit the parties to submit their evidence to the court. <u>Jazini v. Nissan Motor

Co.</u>, 148 F.3d 181, 184 (2d Cir. 1998) ("Prior to discovery, a plaintiff challenged by a

jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient

allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." (emphasis in

original; quotation marks and citations omitted)); <u>Maersk, Inc. v. Neewra, Inc.</u>, --- F. Supp. 2d ---, 2008 WL 929481 (S.D.N.Y. Mar. 27, 2008).

New York law governs the issues raised in the Motions to Quash and Dismiss, as New York law was selected as the governing law of the Transaction Documents and is the law of the forum.  <u>See Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.</u>, 179 F. Supp. 2d 118, 138 (S.D.N.Y. 2000) (enforcing selection of New York law in agreement); <u>In re Parmalat Securities Litigation</u>, 501 F. Supp. 2d 560, 573 (S.D.N.Y. 2007) (applying New York law, the law of the forum, on the basis that "the parties point to no conflict between the law of the forum and that of any other state with respect to the issues necessary to dispose of these motions"); <u>see also</u> <u>Components Direct, Inc. v. European American Bank and Trust Co.</u>, 175 A.D.2d 227, 572 N.Y.S.2d 359 (2d Dep't 1991) (holding that guarantor is bound by the terms of the principal agreement, stating that "guarantee in writing and a principal contract are considered as one for the purpose of interpretation, where the guarantee is made at the time the principal contract is executed").  In addition, the Defendants rely on New York substantive law in their Motions to Quash and Dismiss and do not contend that the law of another jurisdiction should apply.[2]  <u>3Com Corp. v. Banco do Brasil, S.A.</u>, 171 F.3d 739, 743 (2d Cir. 1999) ("[T]he parties rely exclusively on New York substantive law, and 'where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.'" (<u>quoting</u> <u>American Fuel Corp. v. Utah Energy Development Co.</u>, 122 F.3d 130, 134 (2d Cir. 1997)).

---

[2]      Although certain Defendants make reference to Croatian law with respect to service of process, those references are strictly related to the application of Rule 4 of the Federal Rules of Civil Procedure.

I.    THE COMPLAINT ALLEGES SUBSTANTIAL FACTS
      ESTABLISHING JURISDICTION OVER EACH DEFENDANT.

      A.    Specific Jurisdiction in New York over Mr. Adir and KSD is
            established by their direct involvement in the Transaction.

            A New York federal court sitting in diversity must determine the existence of

jurisdiction under both the New York long-arm statute—section 302 of the New York Civil

Practice Law and Rules ("N.Y. C.P.L.R.")—and the due process requirements of the Fourteenth

Amendment of the U.S. Constitution.  A.I. Trade Finance, 989 F.2d at 80-84.

            The New York long-arm statute is satisfied when the defendant "in person or

through an agent . . . transacts any business within the state" out of which the cause of action

arises.  N.Y. C.P.L.R. § 302(a)(1).  Jurisdiction under section 302(a)(1) is proper "even though

the defendant never enters New York, so long as the defendant's activities here were purposeful

and there is a substantial relationship between the transaction and the claim asserted."  Deutsche

Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 818 N.Y.S.2d 164

(2006) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527

N.Y.S.2d 195 (1988)); see also Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 17, 256

N.E.2d 506, 508, 308 N.Y.S.2d 337, 340 (1970) ("It is important to emphasize that one need not

be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for,

particularly in this day of instant long-range communications, one can engage in extensive

purposeful activity here without ever actually setting foot in the State." (citations omitted));

Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 457, 209 N.E.2d 68, 75,

261 N.Y.S.2d 8, 18 (1965) (explaining that even though formal execution of the contract may

have occurred outside New York, "the statutory test may be satisfied by a showing of other

purposeful acts performed by the appellant in this State in relation to the contract, albeit

preliminary or subsequent to its execution").

10

Due process standards are satisfied when the defendant has established "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945). If the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," it may reasonably anticipate the prospect of defending a suit there and, as a result, jurisdiction is proper. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228 (1958)); A.I. Trade Finance, 989 F.2d at 82-84.

For the reasons demonstrated below, Mr. Adir and KSD are each subject to the jurisdiction of this Court on the basis of these standards.[3]

### 1.    The Transaction has substantial connections with New York.

As is apparent on the face of the Transaction Documents and by the facts alleged by Plaintiff, the Transaction is more than sufficiently connected to New York such that all parties involved in the Transaction are subject to the jurisdiction of the New York courts. All parties engaged lawyers in New York, who acted as the main lawyers for the transaction. The Escrow Agreement, signed by Mr. Adir himself as "Sole Officer, Director and Shareholder" of Corcyra, specifically represents that "[t]his Agreement has been negotiated, executed and delivered in the state of New York." (Compl. Ex. 4 § 7(e).) Instructions for the payment due under the Transaction Documents required the funds to be wired to a New York bank account and the escrow agent appointed to hold the shares was located in New York.

---

[3]    Corcyra and Mr. Attia do not dispute that this Court has personal jurisdiction over them for the claims in the Complaint.

2.    *Mr. Adir is subject to the jurisdiction of this Court.*

Mr. Adir transacted business in New York through his involvement in the

Transaction, satisfying the jurisdictional requirements under both the New York long-arm statute

and the U.S. Constitution.  Parke-Bernet Galleries, 26 N.Y.2d at 18, 256 N.E.2d at 509, 308

N.Y.S.2d at 341 (finding personal jurisdiction established over a defendant who was never

actually present in New York but participated in bidding over the phone and with agents carrying

out his instructions within the state); Fischbarg v. Doucet, 9 N.Y.3d 375, 880 N.E. 2d 22, 849

N.Y.S.2d 501 (2007) (affirming exercise of jurisdiction over non-resident individual and

corporation who retained a New York attorney to represent the corporation in an action brought

in an Oregon federal court).  Not only did Mr. Adir, as sole officer, director and shareholder,

necessarily fully control the negotiation and execution of the Transaction Documents and the

retention of lawyers within New York to negotiate and draft the Transaction Documents, he

personally guarantied Corcyra's performance under the SPA.  Mr. Adir's guaranty of Corcyra's

performance, which included an agreement to wire payment to a New York bank account and the

acceptance of the Purchased Shares held by a New York escrow agent, satisfies the standards for

specific jurisdiction over him for disputes relating to the Transaction.  A.I. Trade Finance, 989

F.2d at 80-83 (holding that guarantor of a financial obligation payable in New York was

transacting business in New York under the long-arm statute and subject to personal jurisdiction

in New York for claims relating to its obligations); see also Rielly Co. v. Lisa B. Inc., 181

A.D.2d 269, 586 N.Y.S.2d 668 (3d Dep't 1992) (Pennsylvania corporation's guaranty to be

performed in New York was sufficient to confer jurisdiction); Fashion Tanning Co. v. Shutzer

Indus., 108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dep't 1985) (finding that court had personal

jurisdiction over guarantor who was personally served outside of New York, was a

nondomiciliary of New York and was never physically present in New York; personal jurisdiction based upon performance of guaranty in New York).

Although Mr. Adir states in his affidavit that he was not "directly involved in the negotiations," this conclusory assertion does not address Mr. Adir's guaranty of Corcyra's performance in New York or the steps taken by his counsel on his behalf. Corcyra and Mr. Adir had Elliot Lutzker serving as agent in New York, negotiating the terms of the Transaction Documents and transmitting information received in accordance with the instructions of Mr. Adir. Mr. Adir's affidavit does not allege that Mr. Lutzker was not acting as an agent on his behalf in transmitting information pertaining to the Guaranty and the Transaction, including the negotiation of terms, to Plaintiff's counsel in New York.

For these reasons, Mr. Adir transacted business within New York and purposefully availed himself of conducting activities in New York. As a result, Mr. Adir is subject to the jurisdiction of this Court.

3.    *KSD is subject to the jurisdiction of this Court.*

KSD is within this Court's jurisdiction on the basis of its transacting business in New York. Like Mr. Adir, KSD used Mr. Lutzker as an attorney and agent in New York in connection with the amendments of the Transaction Documents and in negotiations with Plaintiff concerning the Transaction and subsequently in its failure to perform under the Transaction Documents. For example, by Mr. Lutzker's letter dated August 6, 2008 (and apparently faxed from his office in New York), Mr. Lutzker was acting as agent for KSD in negotiating KSD's payment of the amount due under the SPA. (Comp. Ex. 12.) KSD also used Mr. Lutzker's New York address in SEC filings that were related to the Transaction, identifying Mr. Lutzker as a "Person Authorized to Receive Notices and Communications." (See, e.g., Compl. Exs. 11, 12.)

For these reasons, KSD through its agent transacted business within New York and thus purposefully availed itself of conducting activities in New York.  As a result, KSD is subject to the jurisdiction of this Court.

B.    Specific Jurisdiction in New York over Mr. Adir and KSD
      is established through their status as alter egos of Corcyra.

An alter ego will have the same jurisdictional contacts as the legal entity that it dominates and controls.  Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir. 1984) (applying New York law).  This doctrine applies both to dominant parent corporations and dominant shareholders or owners.  D. Klein & Son, Inc. v. Good Decision, Inc., No. 04-1994, 147 Fed. Appx. 195, 197, 2005 WL 361674 (2d Cir. Feb. 15, 2005) (applying New York law); see also Section IV. below.

Establishing that a party is an alter ego for jurisdictional purposes is less onerous than the standards necessary for piercing a corporate veil for liability.  Allojet PLC v. Vantage Assocs., No. 04-CV-5223, 2005 WL 612848, at *23 (S.D.N.Y. Mar. 15, 2005); D. Klein & Son, 147 Fed. Appx. at 196.  One critical difference is that veil piercing for jurisdictional purposes does not require establishing that the domination and control was used to commit a fraud or a wrong.  D. Klein & Son, 147 Fed. Appx. at 196 (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 903 (2d Cir. 1981)).

In deciding whether a party is an alter ego for jurisdictional purposes, a court will consider factors including (1) common or nearly identical ownership interests; (2) financial dependency between the two parties; (3) degree to which a parent corporation interferes in the subsidiary's executive personnel and fails to observe corporate formalities; and (4) degree of control over the marketing and operational policies of the subsidiary exercised by the parent. Volkswagenwerk, 751 F.2d at 120-21.

14

Corcyra has not contested this court's jurisdiction over it for disputes arising out of the Transaction, given the strong connection between the Transaction and Corcyra's purposeful activities within New York as well as Coryra's agreement to the Court's jurisdiction. (See Corcyra Motion.)  For the reasons detailed below, these jurisdictional connections between Corcyra and New York extend to Mr. Adir and KSD on the basis that they each acted as alter egos of Corcyra in respect of the Transaction.

1.    *Mr. Adir is subject to New York jurisdiction as the alter ego of Corcyra.*

Mr. Adir, as alter ego of Corcyra, is amenable to the jurisdiction of this Court on the basis of Corcyra's contacts with this jurisdiction.   Mr. Adir, as the "Sole Officer, Director and Shareholder" of Corcyra (Compl. Ex. 1, signature block), had complete ownership of Corcyra and full domination and control of the company.  He exercised this complete domination and control with respect to this transaction by directing every aspect of the Transaction.  (Compl. ¶¶ 9, 20; Ex. 10.)  Also, as is demonstrated by the Guaranty, his personal funds were being used to satisfy Corcyra's obligations in respect of this transaction (Compl. Ex. 7, 10), further demonstrating that Mr. Adir was merely conducting personal business through Corcyra's corporate form.

2.    *KSD is subject to New York jurisdiction as the alter ego of Corcyra.*

KSD, as alter ego of Corcyra, is also amenable to the jurisdiction of this Court on the basis of Corcyra's contacts with this jurisdiction.   KSD dominated and controlled Corcyra, appointing KSD's sole member—Mr. Attia—to act as the sole director and officer of Corcyra and using these corporate forms to evade responsibility until such time that Corcyra could be stripped of all assets.  Again, KSD's domination and control of Corcyra was specific to the

15

Transaction, in which KSD was effectively conducting the personal business of KSD and Mr. Attia in the name of Corcyra.  (Compl. ¶¶ 42, 52; Ex. 11.)

      C.      Mr. Adir and KSD are bound by the Escrow Agreement's forum selection clause.

An agreement to submit to the jurisdiction of a court will be enforced by a federal court "unless it is clearly shown that enforcement would be unreasonable or unjust or that the clause was obtained through fraud or overreaching." Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990).  This agreement will bind not only the parties but also the alter ego of the parties. Packer v. TDI Sys., 959 F. Supp. 192, 202-03 (S.D.N.Y. 1997) (explaining that a corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over the company's alter ego and given that the corporation's acts are deemed to be the alter ego's acts, the alter ego "has no liberty interests in the jurisdictional objections that he waived by consenting to jurisdiction").

A successor will also be bound by its predecessor's agreement to submit to a court's jurisdiction.  See Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F. Supp. 483 (W.D.N.Y. 1997) (holding that the exercise of personal jurisdiction is proper over a party who acquired some of the assets and continued the business of a corporation that had entered into an agreement with a party containing a New York forum selection clause).  Successor liability attaches when: "(1) the successor corporation expressly or impliedly assumed the liabilities of its predecessor; (2) there was a consolidation or *de facto* merger of the two business entities; (3) the successor is a 'mere continuation' of the predecessor; or (4) the transaction is entered into fraudulently to escape such obligations." Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, (1983); Societe Anonyme Dauphitex v. Schoenfelder

<u>Corp.</u>, No. 07 Civ. 489, 2007 WL 3253592, at *2-*3 (S.D.N.Y. Nov. 7, 2007) (explaining under New York law that the successor liability rule applies equally to tort and contract cases).

In this case, Corcyra agreed to a broad jurisdictional clause in the Escrow Agreement, which provided for the exclusive jurisdiction of New York state and federal courts for "any suit, action or other proceeding arising out of this agreement or any transaction contemplated hereby." (Compl. Ex. 4 § 7(d).) Mr. Adir as alter ego and KSD as alter ego and successor are both bound by this agreement.

1.  *Mr. Adir and KSD are bound by Corcyra's forum selection clause as alter egos of Corcyra.*

For all the reasons detailed above in Section I.A. and below in Section IV., Mr. Adir and KSD are alter egos of Corcyra and as such are bound by this jurisdiction clause entered into by Corcyra.

2.  *KSD is bound by Corcyra's forum selection clause as the successor to Corcyra.*

KSD's purchase of Corcyra and subsequent consolidation of the two companies was a *de facto* merger, a consolidation or a mere continuation of Corcyra's existence. KSD became the sole shareholder of Corcyra and then proceeded to step into Corcyra's shoes with respect to the Transaction, negotiating amendments to the Transaction Documents through KSD's sole member—Mr. Attia—who was acting as Corcyra's sole officer and director. (Compl. ¶ 52.) KSD subsequently transferred the EuroWeb common stock held by Corcyra into the name of KSD for no cash consideration, completing the consolidation of the companies' interests. (Compl. ¶ 52.) KSD's acquisition of Corcyra's interests was a mere continuation of Corcyra's existence, given that both Corcyra and KSD were single-asset companies that held EuroWeb stock. (Compl. Ex. 10 ("Corycyra is currently designated a single asset company."); Declaration of Yossi Attia in Support of Motion to Dismiss and Motion to Quash Service of KSD Pacific,

LLC ("KSD is a singe-asset entity whose only business is now, and in the past has been, the ownership of certain stock of EuroWeb International Corporation.").) KSD continued merely to act as holding company for Corcyra's assets once they were transferred to KSD.

KSD seeks to avoid its status as successor by characterizing this issue as one of assignment, asserting that KSD did not agree to an assignment of the Transaction Documents and that assignment would be invalid under Section 10.2 of the SPA. Nowhere in Plaintiff's complaint is the word assignment used. Plaintiff need not establish assignment in order to bind KSD to the obligations of its predecessor Corcyra given the categories of liability identified in the Schumacher case above. In addition, the Transaction Documents do not place any restrictions on changes to Corcyra's corporate form and provide that the SPA shall be binding on "permitted successors." (Compl. Ex. 1, § 10.2.) See also Brentsun Realty Corp. v. D'Urso Supermarkets, Inc., 182 A.D.2d 604, 582 N.Y.S.2d 216 (2d Dep't 1992) (holding that the merger of a subsidiary corporation into its parent corporation did not constitute an assignment for purposes of violating the nonassignment covenant in the lease and explaining that the nonassigning party could waive the purported breach of this term).

On this basis, KSD is clearly bound by the agreement to submit to the jurisdiction of this Court for this additional reason.

D.    Genuine issues of fact—if any—concerning jurisdiction should be determined after jurisdictional discovery through an evidentiary hearing.

Given that no discovery has been conducted in this action, KPN is entitled to have all inferences drawn in its favor and to have the benefit of all reasonable inferences drawn from its allegations concerning this Court's jurisdiction over the Defendants. Maersk, Inc. v. Neewra, Inc., --- F. Supp. 2d ---, 2008 WL 929481 (S.D.N.Y. Mar. 27, 2008); Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir.1998); A.I. Trade Finance, 989 F.2d at 79-80. For the reasons already

stated, Plaintiff has put forward allegations that are more than sufficient to demonstrate personal

jurisdiction over the Defendants relating to this dispute.   If the Court deems it necessary to

weigh issues of fact relating to jurisdiction over Mr. Adir and KSD at this juncture, Plaintiff is

entitled to conduct discovery related to the jurisdictional issues in dispute and to have an

opportunity to present evidence on these issues.[4]

II.    THE SUMMONS AND COMPLAINT HAVE BEEN
       PROPERLY SERVED UPON CORCYRA AND MR. ADIR.

       Service may be completed by complying with Rule 4 of the Federal Rules of Civil

Procedure ("FRCP") or by complying with any conditions agreed to in waiving service.  Fed. R.

Civ. P. 4; National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964) (stating that

parties to a contract may agree in advance to waive formal service of process).  Here, each

Defendant has been served in compliance with Rule 4 and/or the waiver of service provided by

the Escrow Agreement, to which both Corcyra and Mr. Adir are bound.

       The Escrow Agreement provides that:

       "[e]ach party to this Agreement hereby waives formal service of
       process and agrees that service of any process, summons, notice or
       document by U.S. registered mail to such party's respective address set
       forth above shall be effective service of process for any action, suit or

---

[4]    In conducting such jurisdictional discovery, Plaintiff would intend to request documents and
depositions pertaining to the following jurisdictional topics: (i) the direct contacts of Mr. Adir and KSD
with New York, including instructions that each gave in respect of actions taking place in New York,
transmission of information to New York, participation in calls to New York, participation in meetings in
New York, involvement with Corcyra's transfer agent and broker (both of whom were located in New
York), involvement in directing documents to New York and involvement in the initial closing and
special closing that occurred at Allen & Overy LLP's offices in New York (as counsel to Plaintiff); (ii)
contacts of Mr. Adir and KSD with New York through agents, including the acts of Elliot Lutzker as their
attorney and agent, and any other New York agents; (iii) the facts relating to the control by Mr. Adir of
Corcyra and all additional alter ego jurisdictional contacts; (iv) the facts relating to the control by Mr.
Attia of KSD and KSD's control of Corcyra and all additional alter ego jurisdictional contacts; and (v) the
facts relating to KSD's successor responsibility for Corcyra's agreement to the New York forum selection
clause.  Discovery of these and other related areas of inquiry would provide a full record of the respective
connections between New York and Mr. Adir and KSD, and would provide further support for this
Court's exercise of jurisdiction over these Defendants.

> proceeding in New York with respect to any patters to which it has submitted to jurisdiction in this Section 7(d)."

(Compl. Ex. 4 § 7(d)).  The Notice section of the Escrow Agreement lists both Corcyra's address in Croatia and the address of Mr. Lutzker in New York.  Corcyra also listed Mr. Lutzker as the "Person Authorized to Receive Notices and Communications" in an SEC filing connected to this transaction.  (Compl. Ex. 10.)

Corcyra was served in accordance with the waiver of service, by personal service and registered mail upon Mr. Lutzker in New York.  (Pultman Decl. Ex. 2.)  Corcyra now asserts that Plaintiff must also serve Corcyra by registered mail at its address in Croatia in order to comply with Rule 4 of the Federal Rules of Civil Procedure and the Escrow Agreement.  In order to avoid unnecessary litigation over these issues, Plaintiff served Corcyra on June 17, 2008 by registered mail.  (Pultman Decl. Ex. 3.)

Mr. Adir was also served in accordance with Corcyra's waiver of service.  As alter ego of Corcyra, he is bound by Corcyra's agreement in this regard. (See Section I.B. supra.) Similar to Corcyra, additional copies have also been served on Mr. Adir by registered mail at Corcyra's address in Croatia and the address listed for Mr. Adir in the Guaranty.

Notwithstanding KPN's satisfaction of the technical requirements of service of process, if the Court is not satisfied with service upon Corcyra or Mr. Adir, Plaintiff requests that this Court grant Plaintiff additional time within which to cure any issues with service.

III.   KSD AND MR. ATTIA ARE AMENABLE TO SUIT
       WITHOUT JOINDER OF ANY ADDITIONAL PARTIES.

KSD and Mr. Attia assert that they should be dismissed from this action under FRCP 19 for the failure to join a necessary party, namely Corcyra and KSD.  For the reasons

already stated, Corcyra has been properly served and KSD is subject to the jurisdiction of this

Court.  Notwithstanding this, the argument under FRCP 19 is wholly without merit.

KSD and Mr. Attia have failed to establish the high burden required for

dismissing an action under FRCP 19(b) for the failure to name an indispensable party, namely

that equity and good conscience necessitate dismissal.  <u>Viacom Intern., Inc. v. Kearney</u>, 212 F.3d

721, 724-25 (2d Cir. 2000).  Indeed, given the identical nature of the parties being asserted as

indispensable to KSD and Mr. Attia, it would be unfathomable that KSD and Mr. Attia would

somehow be prejudiced.  <u>See</u> <u>Extra Equipamentos e Exportação Ltda. v. Case Corp.</u>, 361 F.3d

359, 364 (7th Cir. 2004) (commenting that the court had "great difficulty seeing how a 100

percent subsidiary could ever be an indispensable party") (quoted with approval in <u>Merrill Lynch</u>

<u>& Co. Inc. v. Allegheny Energy, Inc.,</u>  500 F.3d 171, 180 (2d Cir. 2007)); <u>see also</u> <u>Grant-Howard</u>

<u>Assoc. v. General Housewares Corp.,</u> 63 N.Y.2d 291, 297, 472 N.E.2d 1, 3, 482 N.Y.S.2d 225,

227 (1984) (holding that plaintiff may elect to proceed against either the predecessor or the

successor).  For this reason, Corcyra cannot be an indispensable party for KSD or Mr. Attia and

KSD, in turn, cannot be an indispensable party for Mr. Attia.

IV.    MR. ATTIA IS LIABLE FOR CORCYRA'S BREACH OF
         THE TRANSACTION DOCUMENTS.

The doctrine of veil piercing or alter ego liability provides that a court will hold

one party liable for the acts of another that it dominates and controls in order to prevent a fraud,

wrong or breach of a legal duty or when necessary to achieve equity.  <u>Wm. Passalacqua Builders,</u>

<u>Inc. v. Resnick Developers South, Inc.</u>, 933 F.2d 131, 138 (2d Cir. 1991) (applying New York

law).  A court will assess the requirement of domination and control upon consideration of a

number of factors, including:

> (1) the absence of the formalities and paraphernalia that are
> part and parcel of the corporate existence, *i.e.*, issuance of

> stock, election of directors, keeping of corporate records and
> the like, (2) inadequate capitalization, (3) whether funds are put
> in and taken out of the corporation for personal rather than
> corporate purposes, (4) overlap in ownership, officers,
> directors, and personnel, (5) common office space, address and
> telephone numbers of corporate entities, (6) the amount of
> business discretion displayed by the allegedly dominated
> corporation, (7) whether the related corporations deal with the
> dominated corporation at arms length, (8) whether the
> corporations are treated as independent profit centers, (9) the
> payment or guarantee of debts of the dominated corporation by
> other corporations in the group, and (10) whether the
> corporation in question had property that was used by other of
> the corporations as if it were its own.

Wm. Passalacqua Builders, 933 F.2d at 139.  The domination and control alleged can be specific

to the transaction in dispute.  Anderson Street Realty Corp v. RHMB New Rochelle Leasing

Corp., 243 A.D. 2d 595, 663 N.Y.S.2d 279, (2d Dep't 1997); Weinreich v. Sandhaus, 850 F.

Supp. 1169 (S.D.N.Y. 1994) (piercing corporate veil between companies and their sole

shareholder and director on the basis that the sole shareholder and director was always in total

control of both companies, common stockholding and common office space).

These factors have the aim of assessing the "determinative factor" of "whether

'the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the

business in their personal capacities for purely personal rather than corporate ends.'"  Port

Chester Elec. Constr. Co. v. Atlas, 40 N.Y.2d 652, 65-57, 357 N.E.2d 983, 389 N.Y.S.2d 327

(1976) quoting Walkovszky v. Carlton, 18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (2d

Dep't 1966); see also Berkey v. Third Avenue Ry. Co., 244 N.Y. 84, 95, 155 N.E. 58, 61 (1926)

(Cardozo, J.) ("Dominion may be so complete, interference so obtrusive, that by the general rules

of agency the parent will be a principal and the subsidiary an agent.").  For this reason, the

corporate veil will be pierced to achieve equity, even absent fraud, "when a corporation has been

so dominated by an individual or other corporation, and its separate entity so ignored, that it

primarily transacts the dominator's business instead of its own and can be called the other's alter ego." Island Seafood Co. v. Golub Corp., 303 A.D.2d 892, 893-94, 759 N.Y.S.2d 768, 769-70 (3d Dep't 2003). (quotation marks and citation omitted); Network Enters. v. APBA Offshore Prods., 427 F. Supp. 2d 463, 488 (S.D.N.Y. 2006) (piercing corporate veil between company and its principal on the basis of the "single most relevant factor" in that case, the principal's "'complete domination over the corporation *with respect to the transaction at issue.*'" (quoting Mag Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58 (2d Cir. 2001)). These standards apply equally to a dominant corporate parent or individual shareholder. Wm. Passalacqua Builders, 933 F.2d at 138 (explaining that "control, whether of the subsidiaries by the parent or the corporation by its stockholders, is the key" (citing American Protein Corp. v. AB Volvo, 844 F.2d 56 (2d Cir. 1988))).

A.    Mr. Attia is liable as the alter ego of Corcyra and KSD
        in connection with the Transaction.

Mr. Attia, KSD's sole member and Corcyra's sole officer and director at a time when KSD owned Corcyra, is the quintessential "alter ego" who hid behind these corporate forms in an attempt to avoid personal liability for conducting his own personal business. Much like the principals in Network Enterprises and Weinreich, Mr. Attia dominated KSD to effectuate his own personal agenda and misused corporate forms by evading responsibility under the Transaction Documents while at the same time stripping Corcyra of its assets. Network Enters., 427 F. Supp. 2d at 488; Weinreich v. Sandhaus, 850 F. Supp. 1169 (S.D.N.Y. 1994). During the relevant time frame in which the Transaction Documents were amended twice and the assets of Corcyra were stripped (Compl. ¶¶ 52, 53; Exs. 2, 3, 5,6, 11), Mr. Attia was the sole officer and director of both Corcyra and KSD and the sole owner of KSD who in turn owned Corcyra. As has now become clear, Mr. Attia was seeking to increase his personal holdings in EuroWeb and

used these corporate forms to achieve this while attempting to avoid being held to the full extent of his obligations in the Transaction.  (Compl. Ex. 11 at 5, 7.)  Given the identical and overlapping nature of the interests between the legal entities and Mr. Attia, the dominance and control exhibited by Mr. Attia specific to the Transaction, the absence of arms length dealings in stripping Corcyra of its assets for no cash consideration and the pursuit of Mr. Attia's personal interests through use of these legal entities, Plaintiff KPN has alleged strong support for the application of alter ego liability or veil piercing in this case against Mr. Attia.

B.    Plaintiff KPN has been harmed by the Defendants' misuse of corporate forms.

Mr. Attia contends that his abuse of corporate forms is without impact, precluding a piercing of the corporate veil.  Plaintiff, however, has clearly alleged otherwise.  The harm that followed as a result of his domination and control of KSD and Corcyra—the breach of the Transaction Documents and the stripping of Corcyra of any assets—is precisely the type of harm against which veil piercing seeks to protect a plaintiff.  As the Sixth Circuit explained in its analysis of a Second Circuit decision, "[i]t is this act of setting up corporate entities as 'shells' so as to shield principals from liability that is referred to as a 'shell game'—it creates an unjust result by leaving plaintiffs unable to recover from the liable corporate entities."  Hamilton v. Carell, 243 F.3d 992, 1004 (6th Cir. 2001) (describing findings in Lowen v. Tower Asset Mgmt., 829 F.2d 1209, 1219-20 (2d Cir.1987) and Valley Fin., Inc. v. United States, 629 F.2d 162, 171 (D.C.Cir. 1980)).

This very shell game was employed by the Defendants named in this action. After Mr. Adir conducted the Transaction through Corcyra, he then transferred his interests to KSD, an entity through which Mr. Attia conducted his personal affairs, and then stripped KSD of its assets.  (Compl. ¶¶ 52, 53.)  On the basis of New York law favoring Plaintiff's position, this

24

Court should hold that Plaintiff has sufficiently alleged that Mr. Attia is legally responsible for Corcyra's breach of the Transaction Documents and KSD's liability as alter ego and successor of Corcyra.

## CONCLUSION

For the reasons stated, Plaintiff KPN B.V. respectfully requests that the Court deny (a) the motion of Corcyra D.O.O. to quash service of the Summons and Complaint; (b) the motion of KSD Pacific, LLC for dismissal of the Complaint; (c) the motion of Moshe Har Adir to quash service of the Summons and Complaint and for dismissal of the Complaint; and (d) the motion of Yossi Attia for dismissal of the Complaint.

In the alternative, KPN B.V. respectfully requests that if the Court finds that KSD Pacific, LLC, Moshe Har Adir and/or Yossi Attia have raised issues of fact concerning this Court's personal jurisdiction over the Defendants, that the Court order jurisdictional discovery and an evidentiary hearing on the issue.

Dated: New York, New York  
        June 23, 2008

Respectfully submitted,

**ALLEN & OVERY LLP**

By:  _s/ Jacob S. Pultman_  
        Jacob S. Pultman  
        Laura Martin

        1221 Avenue of the Americas  
        New York, NY 10020  
        (212) 610-6300  
        jacob.pultman@allenovery.com  
        laura.martin@allenovery.com

        *Attorneys for Plaintiff*  
        *KPN B.V.*